UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIM. CASE NO. 3:14-CR-0367-B |
| | § | |
| JACLYN HOOKER (20), | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Jaclyn Hooker's Motion to Reduce Sentence or in the

Alternative Pursuant to Compassionate Release under 18 U.S.C. § 3582(c) (Doc. 3412). For the

reasons that follow, the motion is **DENIED WITHOUT PREJUDICE**.

**I.**

**BACKGROUND**

Defendant Jaclyn Hooker is currently serving a 165-month sentence at the Bureau of Prisons'

(BOP) Coleman Camp Low (CCL) of the Coleman Correction Complex, a facility comprised of four

prisons. Doc. 3412, Def.'s Mot., 2–3. On November 18, 2014, Hooker pleaded guilty to possession

of a controlled substance with intent to distribute and aiding and abetting, Doc. 290, Plea

Agreement, and she was sentenced on October 1, 2015. Doc. 1193, J., 1–2. Hooker has served

sixty-eight months, or about forty-one percent, of her total sentence with a current release date of

July 3, 2026. Doc. 3412, Def.'s Mot., 1.

Hooker seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) based on underlying

medical issues that make her more susceptible to severe symptoms from COVID-19, including asthma, Legionnaires' disease, chronic bladder and urinary tract infections (UTIs), hypothyroidism, hypertension, hydronephrosis of left kidney, morbid obesity, and irregular heartbeat. *Id.* at 2. She has been treated for UTIs, E. Coli infections, kidney stones, and other renal issues documented back to 2017. *Id.* at 14–53. She has been prescribed medication to treat these conditions. *Id.*

Hooker supports her compassionate release motion by stating she would be unable to receive adequate medical care should she contract COVID-19, due to her high-risk medical conditions and alleged poor hygienic conditions at CCL. *Id.* at 3. She also notes a recent outbreak of Legionnaires' disease at CCL and highlights that the source has not been determined. *Id.* Hooker had questionable test results for Legionnaires' antigens on February 14, 2020. *Id.* at 56. In addition, the BOP reports CCL has 4 confirmed cases of COVID-19, all of which are among prison staff.[1]

In support of her request, Hooker invokes the Court's authority under 18 U.S.C. § 3582(c). Doc. 3412, Def.'s Mot., 1. For the reasons set forth below, the Court **DENIES** Hooker's motion **WITHOUT PREJUDICE**.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of

---

[1] The Court accessed prison COVID-19 information by reviewing statistics available on the BOP's website, available at https://www.bop.gov/coronavirus/.

18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692–93 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)) (footnote omitted). The Court's decision must also be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Section 3582(c)(1)(A)'s exhaustion requirement is generally "a glaring roadblock foreclosing compassionate release" where the "BOP has not had thirty days to consider [the defendant's] request to move for compassionate release on [her] behalf" or if "there has been no adverse decision by [the] BOP for [the defendant] to administratively exhaust within that time period." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see, e.g.*, *United States v. Orellana*, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020). Nonetheless, "several courts have concluded that [the exhaustion] requirement is not absolute and that it can be waived by the government or by the court, thereby justifying an exception in the unique circumstances of the COVID-19 pandemic." *Valentine v. Collier*, 956 F.3d 797, 807 (5th Cir. 2020) (per curiam) (Higginson, J., concurring) (citations omitted).

### III.

### ANALYSIS

The Court finds that Hooker has not exhausted her administrative remedies at the BOP. And even assuming she had, § 3582 does not warrant a sentencing reduction based on the merits of Hooker's case.

A.     *Hooker Has Failed to Exhaust Administrative Remedies or Provide Proof of Circumstances Warranting an Exception.*

Section 3582(c)(1)(A) mandates that this Court may not modify a prison sentence until after the inmate "has fully exhausted all administrative rights to appeal." § 3582(c)(1)(A). The exhaustion

of remedies is met if the defendant either "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or, through no response, set as a "lapse of 30 days from the receipt of [a compassionate release] request by the warden of the defendant's facility." § 3582(c)(1); Doc. 3412, Def.'s Mot., 1.

Hooker states in the motion that "[it] has been more than 30 days since the Compassionate Release [she sent on May 16, 2020] was requested and no answer has been received," presumably to satisfy the no-response exhaustion method. Doc. 3412, Def.'s Mot., 1. But Hooker also includes documentation showing that the CCL denied her request on compassionate release on June 15, 2020. *See id.* at 9. Nonetheless, Hooker has not demonstrated exhaustion of her administrative appeals remedies. Hooker has not provided any proof that, upon receipt of the denial from the warden, she appealed the decision as described in the final paragraph of the denial through submission of Form BP-9. *See id.* While some courts have waived § 3582(c)(1)(A)'s exhaustion requirement because of concerns related to the COVID-19 pandemic, Hooker has not demonstrated any "unique circumstances or unusual factors" specific to her case that warrant such a waiver. *United States v. Rakestraw*, 2020 WL 2119838, at *2 (N.D. Tex. Apr. 14, 2020), *adopted by*, 2020 WL 2114844 (N.D. Tex. May 1, 2020). The Court elaborates on this below.

Due to Hooker's failure to exhaust her administrative remedies or justify a waiver to the exhaustion requirement, the Court **DENIES** Hooker's motion for compassionate release **WITHOUT PREJUDICE** to re-filing upon exhaustion of all administrative appeals.

B.      *Regardless of Exhaustion of Administrative Remedies, Hooker's Motion Fails to Provide Extraordinary and Compelling Reasons Warranting Compassionate Release.*

Apart from the requirement to exhaust administrative remedies, Hooker has not shown "extraordinary and compelling reasons" justifying compassionate release. *See* § 3582(c)(1)(A). The relevant policy statement—U.S.S.G. § 1.13(1)(A)—elaborates on circumstances that are extraordinary and compelling, including an inmate's medical condition, age, and familial status. *See* U.S.S.G. § 1B1.13(1)(A) & cmt. 1.[2] In addition, the defendant must not pose a danger to the community.[3] *See* U.S.S.G. § 1B1.13(2). However, since the enactment of the First Step Act, district courts in the Fifth Circuit have held that § 1B1.13 is no longer binding. *See United States v. Gonzales*, 2019 WL 5102742, at *2–3 (W.D. Tex. Oct. 10, 2019); *United States v. Lee*, 2020 US Dist. LEXIS 101815, at *10–11 (N.D. Tex. Apr. 23, 2020). These courts "consider[] the terms of U.S.S.G. § 1B1.13 while exercising [their] discretion to determine whether the defendant presents an extraordinary and compelling reason for compassionate release." *United States v. Heitman*, 2020 WL 3163188, at *3 (N.D. Tex. June 12, 2020) (citing *Lee*, 2020 U.S. Dist. LEXIS 101815, at *10–11). The Court will do the same here.

---

[2] The policy statement also provides a catch-all provision for the existence of "an extraordinary and compelling reason other than, or in combination with" any of the other listed reasons as determined by the Director of the Bureau.

[3] The Court recognizes Hooker's productivity and commends her work throughout her time in prison, *see*, *e.g.*, Doc. 3421, Def.'s Mot., 58–72, but Hooker's achievements do not constitute an extraordinary reason for compassionate release. *See* § 1B1.13(1)(A) & cmt. 1 (focusing on a defendant's medical condition, age, and family circumstances as bases for compassionate release). While these factors may demonstrate Hooker is not a danger to the community as required by § 3553(a), Hooker must also provide extraordinary and compelling reasons for release before being granted compassionate release. Because Hooker has not demonstrated extraordinary and compelling reasons for release, the Court does not reach the § 3553(a) issue here.

In this case, Hooker states that her circumstances rise to the level of extraordinary and compelling because her medical conditions make her more susceptible to severe health issues should she contract COVID-19. *See* Doc. 3412, Def.'s Mot. 5–6, 8. She also argues that CCL is unable to provide her adequate medical care during the pandemic. *Id.* Applying the relevant terms from the policy statement and its discretion, the Court concludes that Hooker has not provided extraordinary and compelling reasons for release. *See* § 3582(c)(1)(A).

The general circumstances of the COVID-19 pandemic do not form a basis for compassionate release. *See* Doc. 3412, Def.'s Mot. 2–3. The Court recognizes the unprecedented nature of COVID-19 and understands Hooker's fear of contracting the virus. Nevertheless, incarcerated individuals nationwide face Hooker's same circumstances. Thus, general statistics related to COVID-19 fail to demonstrate extraordinary reasons specific to Hooker. *See United States v. Delgado*, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (noting that "the Court must consider every prisoner individually and should be cautious about making blanket pronouncements"). "[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597 (citation omitted).

The Court does not discount that Hooker's preexisting conditions place her at a heightened risk of developing a severe illness if she contracts COVID-19, but her general complaints do not show that the BOP has failed to adequately control the spread of the virus at the facility. *See* Doc. 3412, Def.'s Mot., 2–6. As stated above, there are only four confirmed cases among the staff at her facility and no cases among the inmates. *See supra* at 2.

Moreover, applying the policy statement language, none of the documents that Hooker has provided to the Court demonstrate that she currently has a terminal or debilitating illness that prevents her from providing self-care in a correctional facility environment. *See* U.S.S.G. § 1B1.13(1)(A) & cmt. 1; Doc. 3412, Def.'s Mot., 14–53. While her medical records detail issues ranging from an *E. Coli* infection in March 2017, to a number of kidney-related issues, UTIs, and health issues throughout 2019, these documents do not demonstrate chronic, debilitating illnesses that affect her and her ability to get adequate medical care today. *See* Doc. 3412, Def.'s Mot., 14–53. In fact, Hooker's motion shows that she has received medical care and diagnoses, a number of medical procedures, and prescriptions for her health complaints. *See id.*

Relatedly, Hooker gives examples of an alleged Legionnaires' outbreak in December of 2019 and unsanitary conditions in bathrooms to demonstrate her susceptibility to COVID-19 and lack of medical care available to her. *See* Doc. 3412, Def.'s Mot., 4. However, Hooker was tested for Legionnaires' disease on February 12, 2020, and found to have questionable results of Legionnaires' infection with a possible past infection. *See id.* at 54. While Hooker discusses the threat of Legionnaires' disease, her motion does not show that she continues to face the imminent threat of this disease. *See id.* at 4. Indeed, Hooker states another inmate has filed a lawsuit over the alleged unsanitary conditions, *see id.*, but unrelated ongoing lawsuits are not foundations for compassionate release under § 3582(c)(1)(A). In addition, the BOP has taken more tailored, advanced measures to contain the spread of COVID-19 when compared to an isolated Legionnaires' outbreak, and thus, this allegation fails to establish that BOP is not taking effective steps to manage COVID-19 at

Hooker's facility.[4] *See United States v. Perry*, 2020 WL 3256865, at \*4 (E.D. Tex. June 16, 2020) ("[T]he BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19."). In sum, the Court does not find that Hooker's health-related concerns, and BOP's management thereof at her facility, to be extraordinary or compelling.

To further illustrate, although courts in this district have granted compassionate release motions, these cases involve older defendants with chronic breathing problems and hospitalizations, who have served a majority of their sentences, and were housed at prison facilities where COVID-19 had run rampant in the prison population. *See, e.g., Lee*, 2020 US Dist. LEXIS 101815, at \*11 ("Lee's older age and, moreover, his preexisting medical conditions . . . and his recent hospitalization . . . combined with the rapid spread of COVID-19 at FCI Oakdale, persuade the Court that he 'presents an extraordinary and compelling reason for compassionate release . . . .'").

In contrast, Hooker has served about forty-one percent of her sentence, and she has not established that she is unable to receive adequate medical care. *See* Doc. 3412, Def.'s Mot., 13–53. Without minimizing the seriousness of the COVID-19 pandemic, Hooker is held at CCL, which has only four cases at this time and no cases among inmates. *See supra* at 2 n.1. Thus, Hooker's individual circumstances do not rise to the level of extraordinary and compelling reasons warranting compassionate release.

---

[4] The BOP has outlined its COVID-19 response plan and its modified operations at https://www.bop.gov/coronavirus/covid19_status.jsp.

Should Hooker refile her motion on the basis that safety measures at CCL are ineffective or that COVID-19 cases at CCL have spread, the Court may have to decide whether Hooker's individual conditions reach the level of extraordinary and compelling. But the current information that Hooker has provided is insufficient to show extraordinary and compelling reasons justifying a sentence modification. *See* § 3582(c)(1)(A). Accordingly, the Court **DENIES** Hooker's motion **WITHOUT PREJUDICE**.

## IV.

## CONCLUSION

To the extent Hooker requests compassionate release under § 3582(c)(1)(A), Hooker has not exhausted her administrative remedies. Even assuming she does satisfy the exhaustion requirement, Hooker lacks extraordinary and compelling reasons for compassionate release at this time. For all of these reasons, the Court **DENIES** Hooker's motion (Doc. 3412) **WITHOUT PREJUDICE**.

By denying Hooker's motion without prejudice, the Court permits Hooker to later file a subsequent motion for compassionate release in the event that she can establish: (1) that she has exhausted her administrative remedies under § 3582(c)(1)(A); and (2) that her circumstances rise to the level of extraordinary and compelling.

**SO ORDERED.**

**SIGNED: July 8, 2020.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE